**Ethel SMITH and Ethel Jean Smith, by her next friend, Ethel Smith, Plaintiffs-Respondents,**

v.

**Henry R. BENNETT, Defendant,**

**Allstate Insurance Company, a corporation, Garnishee-Appellant.**

**No. 9045.**

Springfield Court of Appeals, Missouri.

Oct. 20, 1971.

Jackson, Thomasson, Dickerson & Gilbert, Paul V. Gilbert, Cape Girardeau, for garnishee-appellant.

Kenneth L. Dement, Sikeston, for plaintiffs-respondents.

STONE, Judge.

In their two-count suit for damages allegedly resulting from an intersectional vehicular collision in Sikeston, Missouri, on November *17*, 1969, plaintiffs Ethel Smith and Ethel Jean Smith, her daughter, obtained on February *26, 1970*, default judgments in the aggregate sum of $15,000 against defendant Henry R. Bennett. (All emphasis herein is ours.) On May 14, 1970, a default judgment in the same aggregate sum was entered against garnishee Allstate Insurance Company. We have the case on Allstate's appeal from the order of the circuit court on June 12, 1970, overruling Allstate's motions to quash summons and service and to set aside the default judgment against it.

A form accident report completed by the investigating Sikeston police offficer and received in evidence by agreement stated that the accident occurred at 2:55 P.M. on November *15*, 1969; that the vehicles involved in the collision were a 1960 Cadillac sedan *owned and being driven* by plaintiff Ethel Smith, 58 years of age, and a 1969 Buick sedan *owned* by Pearl William, 1850 W. Jackson, Chicago, Illinois, but *being driven* by defendant Henry R. Bennett, 28 years of age, whose address was Naval Air Station, Glenview, Illinois, and whose "occupation" was "US Navy"; that the "killed or injured" were plaintiff Ethel Jean Smith, a student 9 years of age with "unk." injuries, and Catherine Chairs, a

housewife 55 years of age who was a passenger in the William-Bennett Buick and sustained "skinned legs"; and that the injured were taken to the "hospital by Dotson Ambulance, treated & dismissed." Following the abbreviated statement of plaintiff Ethel Smith recorded in the accident report, the notation "MFA Ins." appears; and, after the brief statement of defendant Bennett, we find the terse entry "Allstate Ins." The report reflects the filing of a "C & I Driving" charge against Bennett.

On *November 21, 1969*, plaintiffs' attorney dispatched "a form lien letter" (as he described it) to defendant Bennett at the above address and mailed a copy of that letter to an Allstate office in Cape Girardeau, Missouri, identified by plaintiff's counsel in his presentation to us as *"Allstate's claims office in Cape Girardeau."* After what counsel here characterized as "a rather lengthy delay," J. Amann of the "Claim Department" in *Allstate's "District Service Office, 9871 Manchester Road, St. Louis, Missouri,"* identified as *"Allstate's South St. Louis claims office,"* wrote plaintiff's counsel on *November 26, 1969*, as follows: "The correspondence we have received from you does not include enough information so we can identify it with any of our records. We cannot do anything about this matter until we know the name and address of our policyholder who was involved. Will you please send us any information you have as to: (1) Our policyholder's name and address. (2) The Allstate policy or claim file number. (3) The city and state where the accident occurred. (4) The date of the accident. With the proper information we will be able to take care of this matter promptly."

Under date of *December 1, 1969*, plaintiff's counsel replied to *Allstate's South St. Louis claims office* as follows: "In response to your letter of November 26, 1969, I furnish you the following information: 1. Henry R. Bennett, Naval Air Station, Glenview, Illinois is your policyholder. 2. Your Allstate policy or claim file number is unknown. 3. The accident occurred at the corner of Osage and Westgate Streets in Sikeston, Missouri. 4. The accident occurred on November 15, 1969." It may be noted in passing that the name and address of the *owner* of the 1969 Buick driven by Bennett were not disclosed in either of the two letters to Allstate.

Having heard nothing further from Allstate in the meantime, plaintiff's counsel instituted suit against defendant Bennett in the Circuit Court of Scott County on January 6, 1970. Summons was issued, service was had on defendant as provided in actions against nonresident motorists [Rules 54.13 to 54.17, incl.; §§ 506.200 to 506.320, incl.],[1] and on January 21, 1970, the Secretary of State's return of service was filed in the cause. On February 26, 1970, default judgment for $7,500 was entered on each of the two counts. The judgment entry recited the appearance of "plaintiffs by attorney" (but not in person), submission of the cause to the court, "evidence adduced," finding of the issues for plaintiffs, and assessment of each plaintiff's damages at $7,500. No record was taken by the court reporter on the date of judgment.

On April 6, 1970, a general execution returnable on May 6, 1970 [Rule 76.04; § 513.030] and directed to the Sheriff of St. Louis County [Rule 76.06; § 513.040] was issued upon the aforesaid judgment. The transcript shows that *"afterwards,* the following return was received from the Sheriff of St. Louis County, Missouri":

"No goods, chattels, or real estate found in the County of St. Louis, Mo., belonging to the within named defendant Henry R. Bennett whereon to levy the writ hereto attached and make the debt and costs, or any part thereof; thereupon, *by order of the attorney for plaintiff* (sic), I executed said writ, in said County of St. Louis, at the hour of 8:00 o'clock and 50 minutes A.M., on the 9th day of April 1970, *by de-*

---

1. All references to rules are to the Supreme Court Rules of Civil Procedure, V.A.M.R., and all statutory references are to RSMo 1969, V.A.M.S.

claring in writing to Allstate Insurance Company, a corporation, by delivering said written declaration, directed to said corporation to Ernest Pritchard, Prop. Claims Mgr. of said corporation, he being in the business office of said corporation and having charge thereof, that I attached in its hands all debts due from it to said defendant, Henry R. Bennett, and all goods, moneys, effects, rights, credits, chattels, choses in action and evidences of debt, of, belonging to, the said defendant, Henry R. Bennett, or so much thereof as would be sufficient to satisfy the debt, interest, and costs in this suit, and by summoning it in writing as garnishee, and I, at the same time, by said direction, further executed said writ by summoning said corporation as garnishee, by declaring to it in writing, by delivering a summons of garnishment in writing directed to said corporation, to said Ernest Pritchard, Prop. Claims Mgr. thereof, that I summoned it to appear before the Circuit Court for the County of Scott, at the Court House in Benton in said County, at the return term of said writ, to-wit: On the 6th day of May next, to answer such interrogatories as might be exhibited and propounded to it by the within-named plaintiff (sic).

"The president or other chief officer of said corporation could not be found in the County of St. Louis at the time of service.

Fred M. Joseph
Sheriff of the County
of St. Louis
By /S/ Robert Foley, Deputy
Clayton, Mo.,    May 6, 1970"

The summons to garnishee "so served by the Sheriff of St. Louis County," which (as shown in the transcript) was both undated and unsigned, purported to summon Allstate "to be and appear before the Circuit Court of Scott County, Missouri . . . on the 6th day of May 1970 then and there to answer such allegations and interrogatories as may be exhibited by . . . plaintiffs in the above cause." Although the above-quoted sheriff's return

does not so state or indicate, the transcript recites that "attached to said summons" were interrogatories to garnishee which included the statement and direction, immediately above the signature of plaintiffs' attorney, that "The address of Allstate Insurance Company, Garnishee, is 9231 West Florissant, St. Louis, Missouri," elsewhere identified as "Allstate's North St. Louis County office." The record before us does not reveal the date on which such interrogatories to garnishee were filed in the Circuit Court of Scott County.

On May 14, 1970, the eighth day after the return date of the execution, the court entered a default judgment against garnishee Allstate in the sum of $7,500 on each of the two counts of plaintiffs' petition. As a predicate for that judgment, the court found "that pursuant to general execution . . . said garnishee was properly served with execution and summons to garnishee and interrogatories to garnishee in the manner and form provided by law; that the return date of said execution and summons was May 6, 1970, and that said garnishee has failed to appear and has failed to answer interrogatories directed to said garnishee within six days after the return date of said execution."

On June 8, 1970, garnishee Allstate filed its motions to quash summons and service upon it and to set aside the default judgment. In its motion to quash, Allstate averred that it was an insurance company not incorporated by or organized under the laws of this state and that it had complied with the provisions of § 375.906 by authorizing the superintendent of insurance to accept service of process for and on behalf of the company, but that in the case at bar valid service was not had upon Allstate in accordance with either § 375.906 (among the "Provisions Applicable To All Insurance Companies" in Chapter 375) or § 525.050 (in Chapter 525 dealing with "Garnishments"), now brought forward in Rule 90.04. In its motion to set aside the de-

*fault judgment,* Allstate asseverated, inter alia:

(a) That "the papers" were served upon Ernest Pritchard, property claims manager in Allstate's North St. Louis County office; that "this particular office has nothing to do with claims in Southeast Missouri, and Mr. Pritchard has nothing to do with personal injury claims"; that "Mr. Pritchard understood from the sheriff serving him that if [defendant Bennett] was not employed there or if Allstate did not insure him, they should return the papers to the sheriff so indicating"; and that "this was done by Mr. Pritchard."

(b) That Allstate had "a good and valid defense to this garnishment" in that "to the best of garnishee's knowledge, information and belief, Bennett was not an insured of Allstate, did not have a policy of insurance with Allstate and there was no policy of insurance with Allstate on the car which he was operating" at the time of the collision out of which plaintiffs' alleged causes of action arose; and that, "even should Bennett qualify as an omnibus insured he has not requested this garnishee to defend him or to provide him with insurance coverage and did not give notice to garnishee of the accident nor of the lawsuit filed against him" by plaintiffs.

On the same day Allstate's motions were filed, to wit, on June 8, 1970, there was a brief hearing thereon in the course of which opposing counsel stated their respective positions and, to facilitate disposition of the matter, stipulated that two witnesses for Allstate, namely, Gilbert Beckmeyer, Allstate's claims manager for southeast Missouri, and Ernest Pritchard, property claims manager in Allstate's North St. Louis County office, would testify in support of and in accordance with the above-digested allegations in Allstate's motions. Likewise, by agreement of counsel, plaintiffs' attorney put in evidence four exhibits, i. e., the form accident report by the investigating Sikeston police officer and copies of the three letters to which we referred at the outset of this opinion. When

Allstate's motions were overruled by the court, this timely appeal followed.

■ The initial issue presented for our determination is as to the sufficiency of the purported service shown by the sheriff's return to confer jurisdiction. The governing rule [Rule 90.04] and statute [§ 525.050] alike declare that: "Notice of garnishment shall be served on a corporation, in writing, by delivering such notice, or a copy thereof, to *the president, secretary, treasurer, cashier, or other chief or managing officer of such corporation;* provided, such notice may be served . . . on insurance companies not incorporated by or organized under the laws of this state, by delivering the same, or a copy thereof, to the superintendent of the insurance department." The persons named in Rule 90.04 [§ 525.050] upon whom notice of garnishment may be served, with the possible exception of the "cashier," are what commonly are regarded as the principal or executive officers of a corporation. Construing the phrase "or other chief or managing officer" in the light of the corporate officers theretofore specifically enumerated, we agree with and adopt the holding in C. Rallo Contracting Co. v. Thomas J. Blong Painting Co., Mo. App., 313 S.W.2d 734, 738(3), that the quoted phrase contemplates a duly constituted executive officer whose authority and powers are such that he is regularly in control of the operations and business of the corporation. This construction of the quoted phrase is in accord with the declaration in Stanley v. Sedalia Transit Co., 136 Mo.App. 388, 393, 117 S.W. 685, 686, quoted with approval in C. Rallo Contracting Co., supra, 313 S.W.2d at 738(4), that: "A chief officer of a private corporation is one who has charge and control of its business, is its managing officer, and is not one who is charged with the performance of other and subordinate duties." See Oklahoma Fire Ins. Co. v. Barber Asphalt Paving Co., 34 Okl. 149, 125 P. 734, and Central Ohio Emulsion Corp. v. William Whitman Co., 99 Ohio App. 102, 128 N.E. 2d 237.

■ The return under scrutiny reported service on Allstate by delivery "to Ernest Pritchard, Prop. Claims Mgr. of said corporation, he being in the business office of said corporation and having charge thereof . . . ."[2] There being no suggestion that Pritchard was the president, secretary, treasurer or cashier of Allstate, the return was fatally insufficient unless it may be found that he was an "other chief or managing officer of such corporation." Regardless of whether or not he was in charge of Allstate's North St. Louis County office at the time of purported service upon him, the undisputed fact remains that he was nothing more nor less than the property claims manager in that office. No one has had, or (so we think) reasonably might be expected to manifest, the audacity or temerity even to theorize that, in such capacity as the property claims manager in one of Allstate's several offices in Missouri, Pritchard was "a duly constituted executive officer whose authority and powers [were] such that he [was] regularly in control of the operations and business *of the corporation [Allstate]."* C. Rallo Contracting Co., supra, 313 S.W.2d at 738(3).

Conceding that the record is silent as to whether or not Pritchard was an attorney, plaintiffs' counsel urges us to profess judicial knowledge "that such qualification is commonplace in today's insurance industry" and argues that, in any event, a claims manager should "be more qualified to respond to legal process" than the corporate treasurer or cashier (two of the corporate officers upon whom service of notice of garnishment is authorized by Rule 90.04). But it would be no more permissible, proper or profitable for us so to speculate and suppose dehors the record, pursuant to the invitation of plaintiffs' counsel, than it would be for us to surmise and opine, as the record would seem to invite, why plaintiffs might have chosen to seek service of process upon Allstate at its North St.

Louis County office (which theretofore had not been contacted concerning the claims in suit) rather than at its South St. Louis claims office or its Cape Girardeau claims office (to which letters regarding those claims theretofore had been directed) or, concerning the even more provocative and puzzling question suggested by the record, why plaintiffs did not direct service upon the superintendent of the insurance department [Rule 90.04; § 525.050] and thereby avail themselves of a simple, sure method entailing less trouble and expense.

■ Garnishment is a purely statutory proceeding in derogation of the common law [Flynn v. Janssen, Mo., 284 S.W.2d 421, 422(2); Fulkerson v. Laird, Mo.App., 421 S.W.2d 523, 526; 6 Am.Jur.2d Attachment and Garnishment § 9, p. 567; 38 C.J. S. Garnishment § 1b, p. 201], and strict compliance with all requirements formerly imposed only by statutes but now also enjoined by our civil rules is indubitably essential to confer and support jurisdiction in a garnishment proceeding. Sanco Finance Co. v. Agnew, Mo.App., 462 S.W.2d 833, 835(1); Fulkerson, supra, 421 S.W.2d at 526(3); Milliken v. Armour & Co., 231 Mo.App. 662, 665, 104 S.W.2d 1027, 1028(3); State ex rel. Shaw State Bank v. Pfeffle, 220 Mo.App. 676, 685, 293 S.W. 512, 516(12). The sheriff's return in the case at bar was clearly insufficient, garnishee Allstate's motion to quash should have been sustained, and the judgment nisi must be set aside. State ex rel. Associated Transport Corp. v. Godfrey, Mo.App., 464 S.W.2d 776(1); Blackburn Motor Co. v. Benjamin Motor Co., Mo.App., 340 S.W.2d 155, 158–160(1–3); C. Rallo Contracting Co., supra, 313 S.W.2d at 736–739.

■ In the interest of minimizing the possibility of error in further proceedings, we mention another matter, which obtrudes on the face of the record, constitutes plain error affecting garnishee's substantial rights [Rule 79.04], and if there had been

---

2. This smacks of language which might be appropriate in reporting service of summons and petition upon a corporate de-

fendant in accordance with Rule 54.06(c) (1), neither governing nor applicable here.

valid service of process upon Allstate would have required the setting aside of the judgment nisi. Simply and bluntly put, even if there had been valid service, garnishee would not have been in default when a default judgment was entered against it on *May 14, 1970, eight days after May 6, 1970,* the return date of the writ of execution. Plaintiffs were required to "exhibit" and file their interrogatories "at the return date of the writ [May 6, 1970], or within six days thereof." Rule 90.12.[3] As we have noted, the transcript on appeal does not indicate when the interrogatories to garnishee were filed in the Circuit Court of Scott County.[4] But, for the purposes of this discussion, we assume that such interrogatories were exhibited and filed "at the return date of the writ [May 6, 1970]," notwithstanding the grave doubt engendered by the transcript that they were.

So assuming, when would garnishee Allstate (if there had been valid service of process upon it) have been required to answer those interrogatories? Plaintiffs' attorney may have directed the trial court to § 525.140[5] for information and guidance on that subject[6] since the default judgment of May 14, 1970, against garnishee was preceded by and predicated upon findings "that the return date of said execution and summons [to garnishee] was May 6, 1970, and that said garnishee has failed to appear and has failed to answer interrogatories directed to said garnishee *within six days after the return date of said execution.*" However, § 525.140 was superseded by Rule 90.13 [see Rules 41.04 and 41.08], which declares that "[*u*]*pon the filing of the interrogatories aforesaid, the garnishee shall exhibit and file his answer thereto, on oath, within ten days after service thereof . . . . .*" Nothing in the rules of civil procedure pertaining to garnishments would seem to contemplate (much less require) either (a) the *filing* of interrogatories prior to the return date of the writ of execution or (b) *service* of such interrogatories upon garnishee prior to their filing. On the contrary, Rule 90.12 plainly requires that *"interrogatories shall be filed at the return date of the writ, or within six days thereof,"* and Rule 90.13 declares that "[*u*]*pon the filing of the interrogatories aforesaid"* garnishee shall file his answer *"within ten days after service thereof."* Thus Rule 90.13 contemplates service of the interrogatories upon garnishee on or after the date of their filing[7] (whereas su-

---

3. Section 525.130 (superseded by Rule 90.12—see Rules 41.04 and 41.08) provided that "interrogatories shall be filed at the return term of the writ, and within the first three days thereof, if the term shall so long continue, and if not, then before the end of the term . . . . ."

4. Immediately following the general execution issued on April 6, 1970, the record recites that "[*a*]*fterwards, the following return* was received from the Sheriff of St. Louis County, Missouri." Although the sheriff's return reflected purported service on April 9, 1970, the entry on the return below the deputy's signature, *"Clayton, Mo., May 6, 1970,"* suggests that the return copy of the writ of execution and whatever may have been attached thereto (if anything) were not in Scott County, Missouri, on May 6, 1970. No filing date in the Circuit Court of Scott County is shown for (a) the sheriff's return, (b) the undated and unsigned summons to garnishee copied in the transcript, or (c) the undated interrogatories to

garnishee said to have been "[*a*]ttached to said summons."

5. Section 525.140 provided that: "Upon the filing of the interrogatories aforesaid, the garnishee shall exhibit and file his answer thereto, on oath, *within six days thereafter,* if the term shall so long continue, if not, during such term . . . . ."

6. This is further suggested by the circumstance that, in presenting their respective positions on the primary issue of service of process, counsel referred only to § 525.050, without apparent recognition of the fact that the provisions of that statute have been brought forward and embodied in Rule 90.04.

7. Otherwise, *antecedent* service of interrogatories upon a garnishee contemporaneously with service of the writ of execution would create a bizarre and anomalous situation in which garnishee would be required to answer or placed in default prior to the return date of the writ of execution and prior to the filing of interrogatories.

perseded §§ 525.130 and 525.140 contained no mention of or reference to service) and requires garnishee to answer *"within ten days after service."* Accordingly, garnishee Allstate could not have been in default on May 14, 1970, the *eighth* day after May 6, 1970, the return date of the writ, *even if* there had been valid service of process upon it on April 9, 1970.

Since other irregularities or defects of which garnishee complains need not recur, we do not discuss them here. It is the judgment of this court that the sheriff's return of service upon garnishee Allstate should be and hereby is quashed, that the default judgment in favor of plaintiffs and against Allstate entered of record in the Circuit Court of Scott County, Missouri, on May 14, 1970, should be and hereby is set aside and for naught held, and that the cause be remanded to said circuit court for further proceedings not inconsistent with this opinion.

TITUS, P. J., and HOGAN, J., concur.