Charles KENNEY, Plaintiff/Appellant,

v.

Dale E. EMGE, Defendant/Respondent.

No. 72644.

Missouri Court of Appeals,
Eastern District,
Division One.

June 30, 1998.

John J. Pawloski, Robert P. Sass, Landau, Omahana & Kopka, P.C., St. Louis, for Plaintiff/Appellant.

Robert M. Wohler, O'Fallon, for Defendant/Respondent.

GRIMM, Presiding Judge.

This case concerns disputes that arose between two equal shareholders who were the only shareholders and officers of a small corporation.[1] Defendant terminated plaintiff; plaintiff then sued defendant seeking injunctive relief including reinstatement. In response, defendant sought an injunction to prevent plaintiff from doing anything detrimental to the company.

The matters were submitted to the trial court. Following a bench trial, the trial court granted defendant's request and denied plaintiff's petition.

Plaintiff appeals, raising five points. He alleges the trial court erred (1) by finding defendant could terminate him without the approval of the Board of Directors, (2) in denying his request for injunctive relief Abased on the finding that [plaintiff] had unclean hands," (3) in overruling his objection concerning testimony regarding mediation, (4) in ordering him to pay $6,000 of defendant's attorney fees, and (5) in not sua sponte dismissing defendant's request for injunctive relief due to lack of jurisdiction. We modify the award of attorney fees and affirm.

## I. Background

In the fall of 1994, the parties formed the corporation and purchased the assets of another business. The Articles of Incorporation provide that the Board of Directors shall consist of two directors; the parties elected themselves. Defendant was elected president and plaintiff was elected secretary.

Four sections of the bylaws under the caption "OFFICERS" bear mentioning. In section 23(b), titled Term of Office, the bylaws state that each "officer of the corporation shall hold his office at the pleasure of the Board of Directors or for such other period as the Board may specify at the time of his election or appointment, or until his death, resignation or removal by the Board, whichever first occurs."

Section 24, titled Removal, says:

Any officer or agent elected or appointed by the Board of Directors, and any employee, may be removed or discharged by the Board whenever in its judgment the best interests of the corporation would be served thereby, but such removal shall be without prejudice to the contract rights, if any, of the person so removed.

Section 26, titled Delegation of Authority to Hire, Discharge and Designate Duties, provides:

The Board from time to time may delegate to the president or other officer or executive officer or executive employee of the corporation, authority to hire, discharge and fix and modify the duties, salary or other compensation of employees of the corporation under their jurisdiction....

The next section, section 27, titled The President, states:

Unless the Board otherwise provides, the president shall be the *chief executive officer of the corporation with such general executive powers and duties of supervision and management as are usually vested in the office of the chief executive officer of a corporation* and he shall carry into effect all directions and resolutions of the Board. *He shall have general supervision over the business and affairs of the corporation* and shall have such other duties, powers and authority as pertains to that office. (emphasis added).

Section 28 provides that the secretary is to attend meetings and keep accurate records. In addition, it states that the secretary is to perform other duties as might be prescribed by "the chief executive officer under whose direct supervision he shall be."

When the parties formed the company, they agreed that plaintiff was responsible for the sales and marketing program. Defendant was responsible for all other areas of the business.

Problems arose. On May 9, 1995, defendant wrote plaintiff. He expressed concern that plaintiff was not carrying out his promise to "be in front of customers 4 days out of

1. The parties are actually equal shareholders in two corporations, Permian Plastics, Inc. and Permian Holdings, Inc. Apparently, for all intents and purposes, the two were treated as one. For ease of reading, we refer to the two as one.

every week." He pointed out the negative cash flow for the first five months and expressed the opinion that they should dissolve their business relationship. On July 11, 1996, an attempt was made by defendant to better define the parties respective responsibilities.

On January 15, 1997, defendant wrote plaintiff concerning the fact that plaintiff makes virtually no independent customer contact. Further, he said that he was dissatisfied with plaintiff's "performance, commitment, effort and effectiveness" in sales and marketing and that he was not performing the job responsibilities he agreed to in writing the previous year. Enclosed with this letter was a summary of their financial involvement with the company. It disclosed that defendant invested $45,000 and loaned plaintiff $45,000 for his part of the acquisition. In addition, defendant had also put up his house as collateral for the acquisition. Plaintiff had repaid $20,502 of the loan.

On January 19, defendant suggested another meeting with plaintiff to discuss his concerns. Plaintiff did not respond to either of these two letters.

On January 23, defendant sent plaintiff a letter formally notifying him that his employment with the company was terminated, effective immediately. Further, the letter stated plaintiff would no longer have access to the use of any of the physical facilities or assets of the company. Also, it asked plaintiff to return all company materials immediately. Finally, the letter said that any contact with customers would be detrimental to any entitlement to deferred salary or expense payments.

On January 30, plaintiff filed a petition seeking a temporary restraining order and an injunction in St. Louis County Circuit Court. On that same day, plaintiff deposited $500 in lieu of a bond and the trial court issued a temporary restraining order as requested. Among other things, the order granted plaintiff access to the company's facilities, prevented termination of his compensation, and granted permission to inspect and copy company records in the possession of its counsel. A hearing on the preliminary injunction was set for February 4.

On February 4, defendant filed an application for temporary restraining order and motion for preliminary injunction. Generally, these pleadings sought an order to preserve corporate assets and prevent waste by plaintiff.

None of the pleadings were formally presented to the trial court. Rather, on February 4, following a conference with the court, the parties entered into a Stipulation and Judgment Order. Among the items in this four-page document, they agreed that each party would select a person and the two selected would choose a third person to act as a mediation panel. The panel was to "meet with the parties and make recommendations to resolve the impasse between the parties in a written report which shall be made available to the court. The report is to address sales and production standards as well as buy-out options and matters relating thereto, and also corporate expenditures and obligations." Further, the parties stipulated (1) to engage in active efforts to exchange buy-out proposals, (2) to provide access to and protection of corporate software and business records, (3) to not make detrimental comments, and (4) that plaintiff's compensation would be continued although he was not to be involved in the day-to-day business.

The parties did not resolve their disputes and the matter was tried to the court. At the conclusion of the hearing, the trial court denied plaintiff's requests. It granted defendant's requests, and determined that plaintiff was not entitled to further salary compensation. In addition, it awarded defendant's attorney $6,000 as fees.

## II. Ability To Terminate Employee

◼ In his first point, plaintiff alleges the trial court erred by failing to grant injunctive relief on his behalf and in finding that defendant could terminate plaintiff without the approval of the Board of Directors. He contends that finding "contravenes the bylaws" because they "state that only the Board of Directors has the authority to remove an officer or discharge an employee." He maintains the record contains no evidence that the Board authorized his termination.

Plaintiff contends that under the bylaws quoted above, Ait is clear that the power to discharge is the board of director's (sic) alone to exercise or delegate." He then argues that since the board did not delegate that authority to defendant, defendant did not have the authority to discharge him. We disagree.

Plaintiff does not dispute that defendant is president. However, under these bylaws, defendant is more than just a president. The bylaws provide that he is "the chief executive officer of the corporation with such general executive powers and duties of supervision and management as are usually vested in the office of the chief executive officer of a corporation." Further, they provide that he has "general supervision over the business and affairs of the corporation."

Neither party referred us to any case that defines the power of a "chief executive officer" of a corporation. Nor has our independent research disclosed any clearly applicable decision. In the context of service of process on a Achief or managing officer," it has been said that such a person Ais one who has charge and control of its business, is its managing officer, and is not one who is charged with the performance of other and subordinate duties." *C. Rallo Contracting Co. v. Blong,* 313 S.W.2d 734, 738 (Mo.App. E.D.1958); *Smith v. Bennett,* 472 S.W.2d 623, 627 (Mo.App. S.D.1971).

Numerous cases hold that a president of a corporation, without any special authority from the board of directors, may perform for the corporation all acts of an ordinary nature which, by usage or necessity are incident to his office. *See e.g., Fair Mercantile Co. v. Union–May–Stern Co.,* 359 Mo. 385, 221 S.W.2d 751, 753 (Div.1 1949). However, in the case before us, defendant is not only president, he is also the chief executive officer of the company.

It could be argued that a chief executive officer is at least a general manager of the corporation. "The office of general manager is of broader import than that of president. The fact that a person having an active conduct of the business of a corporation is also its president does not operate as a limitation on the powers usually exercised by its gener-al agents or managers; *his authority is not limited to that possessed by virtue of his office as president, but is incidental to the management of the business."* Streett v. Laclede–Christy Co., 409 S.W.2d 691, 694 (Mo.Div.1 1966) (emphasis added).

Drawing on these cases, we conclude that on the facts before us, the trial court did not abuse its discretion in determining that defendant had the authority to terminate plaintiff as an employee. Here, the testimony established that the corporation is a small one, with only twenty-five employees. Defendant was both president and chief executive officer and his uncontradicted testimony established that he was actively in charge of the day-to-day operations of the company. In such a situation, defendant, as chief executive officer, had the authority to hire and fire employees.

Nothing in the bylaws required the trial court to reach a different conclusion. The bylaws quoted above are in a section titled "Officers." Defendant did not terminate plaintiff as an officer; he terminated him as an employee.

Section 24 provides that the board of directors "may" remove or discharge employees. However, nothing in that section prohibits the chief executive officer from also discharging employees. Nor does section 26 prevent the conclusion that defendant, as chief executive officer of a small, closely-held corporation with general executive powers, did not have the power to hire and fire employees. Point denied.

As an aside, we note that plaintiff is still a shareholder and is secretary of the board of directors. With equal shareholders and only a two-person board of directors, the board may be deadlocked in its management of the corporation. Sections 351.323 and 351.494 RSMo 1994 provide procedures for resolving such situations.

### III. Unclean Hands

In his second point, plaintiff alleges the trial court erred in denying his petition for injunctive relief based on the finding that he had unclean hands. He maintains he was "not guilty of unlawful or inequitable con-

duct" because there is no evidence "to suggest that [plaintiff] had taken any customers of [company] or engaged in any improper conduct."

Here testimony, if believed, is sufficient to support the trial court's finding. While being examined by plaintiff's counsel, defendant testified that a manufacturer's representative told him that plaintiff "outlined to him his plans to take certain accounts and, at some point, set up—take those accounts and move them into his own corporation." Further, defendant testified that at a subsequent time, he raised the issue with plaintiff and plaintiff "acknowledged making such comments."

■ A court of equity will not aid a plaintiff who comes into court with unclean hands. One "who has engaged in inequitable activity regarding the very matter for which he seeks relief will find his action barred by his own misconduct." *Mahaffy v. City of Woodson Terrace,* 609 S.W.2d 233, 238 (Mo.App. E.D. 1980). Point denied.

### IV. Mediation Testimony

■ In his third point, plaintiff alleges the Atrial court prejudicially erred in admitting over plaintiff's objection the testimony of mediator ... and the testimony of [defendant] regarding the mediation in contravention of section 435.014 RSMo." [2] He contends the mediation discussions are considered settlement negotiations and "admission of such negotiations frustrates the public policy of encouraging settlements...." Further, he alleges the trial court's reliance on this testimony improperly prejudiced his substantive rights and denied him a fair trial.

Section 435.014 states:

1. If all the parties to a dispute agree in writing to submit their dispute to any form for arbitration, conciliation or mediation, then no person who serves as arbitrator, conciliator or mediator, nor any agent or employee of that person, shall be subpoenaed or otherwise compelled to disclose any matter disclosed in the process of setting up or conducting the arbitration, conciliation, or mediation.

2. Arbitration, conciliation and mediation proceedings shall be regarded as settlement negotiations. Any communication relating to the subject matter of such disputes made during the resolution process by any participant, mediator, conciliator, arbitrator or any other person present at the dispute resolution shall be a confidential communication. No admission, representation, statement or other confidential communication made in setting up or conducting such proceedings not otherwise discoverable or obtainable shall be admissible as evidence or subject to discovery.

As mentioned in the Background section, on February 4, 1997, the parties stipulated to mediation by a three-person panel. The panel was to "meet with the parties and make recommendations to resolve the impasse between the parties in a written report which shall be made available to the court. The report is to address sales and production standards as well as buy-out options and matters relating thereto, and also corporate expenditures and obligations."

The parties did not comply with the stipulation or the judgment entered thereon. Rather, for a reason unexplained in the record, on April 18, 1997, the parties signed an Agreement to Mediate with a single mediator. The mediation was unsuccessful.

At trial, the first mention of mediation occurred during the first day as plaintiff's counsel examined defendant. During that examination, defendant mentioned that certain checks that the company sent plaintiff "were based on agreements that [plaintiff] and I made ... in the mediator (sic) that was recommended by [plaintiff]." Plaintiff's counsel then asked, "And was that—Was ever an agreement entered in writing, signed by both parties?" Defendant responded, AI don't know if [plaintiff] signed his. The agreement that was developed that day was agreed to verbally by [plaintiff] and I in front of [the mediator]." Plaintiff's counsel did not move to strike any of this testimony.

Later that day, mediation was mentioned again. The trial court asked if the mediator

---

**2.** Plaintiff's brief refers to RSMo 1986. Section 435.014 RSMo 1994 is identical to that section in RSMo 1986. Therefore, all statutory references are to RSMo 1994.

was going to testify. Defendant's counsel replied no, that the mediator was supposed to submit a report to the court and not be a witness. The parties acknowledged that no report had been filed. Testimony continued. At day's end, the trial court suggested that the mediator be brought to court the next time testimony was heard. Neither party objected to this suggestion. In addition, the trial court suggested the possibility of hearing several other witnesses; again, no one objected.

When the hearing resumed about a week later, plaintiff's attorney objected to the mediator testifying. He pointed out that the parties had agreed that the mediator would not be called as a witness and that his testimony would also violate Missouri law. The trial court did not rule the objection.

The mediator was sworn and he identified himself. At that point, the mediator stated to the court that the parties agreed not to call him to testify and that under section 435.014, he is "exempted from testifying." The trial court required the mediator to testify, but cautioned the witness not Ato testify as to the details of what was going on here." Among other things, the mediator stated that he had prepared an Interim Agreement for the parties to review with their attorneys. The trial court sustained objections relating to the details of that agreement. The mediator's other testimony did not relate to anything that was said during the mediation process, but did include information about the setting up of the proceedings.

The trial court erred in requiring the mediator to appear and testify in court. Section 435.014 clearly provides that if parties submit a dispute to a mediator, then the mediator shall not be "subpoenaed or otherwise compelled to disclose any matter disclosed in the process of setting up or conducting" the mediation. *See also* Rule 17.06(b) (no person providing alternative dispute resolution services pursuant to Rule 17 "shall be subpoenaed or otherwise compelled to disclose any matter disclosed in the process of setting up or conducting the alternative dispute resolution process").

■ Although the trial court erred, plaintiff was not prejudiced by the limited testimony of the mediator. As noted, defendant testified that a verbal agreement was reached in the presence of the mediator while being examined by plaintiff's counsel. Plaintiff did not move to strike that testimony and thus it was before the trial court. Further, defendant testified, without objection, that he made a buy out proposal based on the mediator's suggestion, but received no response from plaintiff. Moreover, neither the terms of the Interim Agreement, nor the agreement itself, were offered as evidence. Point denied.

### V. Attorney Fees

■ In his fourth point, plaintiff alleges the trial court erred in ordering plaintiff to pay defendant attorney fees of $6,000. He contends that under Missouri law, attorney fees "may not be recovered unless provided for by contract or by statute, and there was an [in]adequate foundation for a fee award on the record below."

The testimony concerning attorney fees incurred by each party was sparse. However, recognizing that trial courts are experts in assessing attorney fees, we cannot say that the record was inadequate to support an award of attorney fees.

However, in securing his temporary restraining order, plaintiff filed a $500 cash deposit in lieu of bond as provided by Rule 92.02(2)(c). Nothing in the record reflects that defendant sought to have that amount increased, or that it was increased. Thus, plaintiff's obligation is limited to the amount of the bond, notwithstanding that defendant incurred greater expenses. *Hamilton v. Hecht*, 299 S.W.2d 577, 579 (Mo.App. E.D. 1957)(with damages of $788.45 and $350 bond, "plaintiff is not liable for damages arising out of an injunction" except to the amount of the bond and therefore the trial court correctly limited award to $350); *Stensto v. Sunset Memorial Park, Inc.*, 759 S.W.2d 261, 267 (Mo.App. E.D.1988) (statutes and "Rule 92.02(c) provide the only basis for an assessment of damages arising from the issuance of an injunction ... (and) the amount of the bond establishes the limit of damages [plaintiff] is entitled to recover").

*see also* Zitter, Annotation, *Recovery of Damages Resulting from Wrongful Issuance of Injunction as Limited to Amount of Bond,* 30 A.L.R.4th 273 (1984). Thus, we modify the trial court's award of attorney's fees against plaintiff to $500. Otherwise, we deny the point.

## VI. Jurisdiction

In his final point, plaintiff alleges the trial court erred in not *sua sponte* dismissing defendant's claims for injunctive relief because exclusive jurisdiction was in St. Charles County. Also, he alleges the trial court lacked jurisdiction because defendant failed to post a bond pursuant to Rule 92.02(c).

■ Concerning his first allegation, plaintiff relies on section 351.850.2 which states:

> A shareholder shall commence a proceeding under subsection 1 of this section in the circuit court of the county where the corporation's principal office . . . is located.

Plaintiff contends the principal office of the company is located in St. Charles County. Therefore, he argues, St. Louis County lacked subject matter jurisdiction on defendant's claims and had no authority except to dismiss the case.

Without determining the applicability of section 351.850.2 to either defendant's pleadings or the relief he sought, we disagree with plaintiff's contention. Rule 55.32(a) pertains to compulsory counterclaims. That rule provides in part:

> A pleading shall state as a counterclaim any claim that at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

Although defendant did not title his pleading counterclaim, for all intents and purposes, it was a counterclaim. Clearly, his claim arose out of the same occurrence that is the subject of plaintiff's claim.

Moreover, to hold that defendant would have to file his claim in St. Charles County while plaintiff pursued his claim in St. Louis County would be a waste of legal and judicial resources. Attorneys would have to present virtually the same evidence twice and there would be the inherent risk of conflicting rulings.

■ We turn to plaintiff's other argument that the trial court acted outside its jurisdiction because defendant failed to post a bond before the hearing on the preliminary injunction. Rule 92.02(c) states in pertinent part:

> No injunction or temporary restraining order, unless on final hearing or judgment, shall issue in any case, . . . until the plaintiff, . . . shall have executed a bond . . . in such sum as the court shall deem sufficient to secure the amount. . . .

Plaintiff's argument has no merit. A temporary restraining order was not granted against plaintiff. Rather, on February 4, 1997, the parties entered into a stipulation which was the basis for the trial court's judgment. At that time, plaintiff did not object that defendant had not posted a bond.

At the beginning of the May 1997 trial, plaintiff did file a motion to dismiss defendant's claim. However, although the motion alleged in shotgun fashion that defendant had Anot complied with all necessary procedural prerequisites," no mention was made of the lack of a bond.

Further, according to Rule 92.02(c), a bond is not required on final hearing or judgment. Defendant obtained relief at the conclusion of the final hearing, when the final judgment was issued. At that time, defendant was not required to post bond. Point denied.

We modify the trial court's judgment by awarding attorney fees of $500 instead of $6,000 due to the limitation of the bond. In all other respects, the trial court's judgment is affirmed.

PUDLOWSKI and GARY M. GAERTNER, JJ., concur.