**In the Matter of DE FEO FRUIT COMPANY, INC., Debtor.**

**Daniel J. FLANIGAN, trustee in bankruptcy, Plaintiff,**

v.

**Harry DEFEO, Sr.; Antoinette Defeo; Harry Defeo, Jr.; Mary Defeo; Jack A. Defeo, and Katherine Defeo, Defendants.**

**Bankruptcy No. 79–01282–11.
Adv. No. 81–0319–3.**

United States Bankruptcy Court,
W.D. Missouri, W.D.

Sept. 3, 1982.

John R. Cleary, and Jack Mitchell, Kansas City, Mo., for plaintiff.

Michael R. Roser, Kansas City, Mo., for defendants.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND FINAL JUDGMENT GRANTING IN PART AND DENYING IN PART PLAINTIFF'S CLAIM FOR RELIEF AND ACCORDINGLY GRANTING JUDGMENT FOR PLAINTIFF AND AGAINST THE DEFENDANT HARRY DEFEO, JR., IN THE SUM OF $29,586.18 AND AGAINST THE DEFENDANT JACK A. DEFEO IN THE SUM OF $6,644.26 AND ACCORDINGLY OTHERWISE DENYING COMPLAINT

DENNIS J. STEWART, Bankruptcy Judge.

The plaintiff trustee in bankruptcy brings this action against the defendants, the former controlling officers of the debtor DeFeo Fruit Company, Inc., and their wives, to recover certain sums of money which the trustee contends that they took from the debtor corporation in the year next preceding the date of commencement of these proceedings.[1] The trustee also seeks to recover some of the same monies jointly and severally from the former officers' wives on the theory that they were ultimate transferees of the monies.[2]

---

1. As is further developed below in the text of this memorandum, the complaint also seeks recovery on the basis of certain "accounts receivable" owed the debtor corporation by the defendants Harry DeFeo, Sr., Harry DeFeo, Jr., and Jack A. DeFeo.

2. In his posttrial brief, the plaintiff asserts that: "The totals for the payments made to the De-

In consonance with pretrial orders entered by the court, a considerable period of discovery was permitted to the parties, during the course of which the parties were to exchange summaries of the contents of voluminous documents under the provisions of Rule 1006 of the Federal Rules of Evidence.[3] No such summaries were prepared or exchanged by the parties.

Thereafter, the trial of the issues was conducted by the court sitting without a jury on the dates of January 28, 1982, and January 30, 1982, whereupon the plaintiff appeared by counsel, John R. Cleary, Esquire, and Jack Mitchell, Esquire, and the defendants appeared by counsel, Michael R. Roser, Esquire.

## I

At the trial, despite the provisions of the court's pretrial order relating to summaries, the plaintiff offered in evidence unsummarized documents having voluminous contents. This has necessitated the court's having to sift through the voluminous and unsummarized documents as a prerequisite to making its findings of fact and rendering its judgment in this action. Thus, necessarily, the decision in this action has been considerably delayed what it would have been had the evidence been prepared and presented in the manner contemplated by the pretrial order.

## II

The material facts demonstrated by the evidence are nevertheless few and comparatively simple. In the course of the hearing, the plaintiff trustee offered evidence to show that, in the year next preceding bankruptcy, the debtor corporation made a considerable number of payments for the benefit of the defendants. As evidenced by the debtor corporation's books and records, at least some of these payments were made on the defendants' personal accounts and for their personal benefit.[4] The payments were classified as "accounts receivable" on the debtor corporation's records. In respect of these payments, the defendant Harry DeFeo, Jr., the only defendant who appeared and testified at the trial, testified that the payments were made on account of some overtime work done by each of the male defendants.[5] Evidence was additionally adduced by the defendants to the effect that the debtor corporation was a subchapter S corporation and that it was of benefit taxwise to the corporation to ensure that all profits or excess funds were periodically paid out,[6] and that it was for this purpose, rather than any intent to hinder, delay or defraud creditors, that these payments

---

Feos and their wives within one year prior to October 6, 1979, are: Harry, Sr. and Antoinette DeFeo—$8,115.58; Harry, Jr. and Mary DeFeo—$32,158.25; and Jack and Katherine DeFeo—$5,970.71. These figures are taken from the Debtor's Ledger which reflects the date, time and recipient of each transfer of property from the Debtor. Should the Court find the DeFeos (husbands) responsible fully for their respective account receivable, then this amount of liability should not be added on to the respective account balance since it represents a portion of each account receivable."

3. Under the terms of the same pretrial orders, the parties were granted opportunities to object to the admissibility of the other party's summaries. The problems of proof, had the pretrial order been followed, might have been worked out by the parties with the aid of the court or without the aid of the court prior to trial. "We think that the framers of (Rule 1006) of the Federal Rules of Evidence) clearly contemplated a pre-trial resolution of any issues that may be raised concerning the use of summaries. By

requiring that the underlying documents be made available to opposing counsel, the rule encourages counsel to eliminate objectionable matter and to stipulate to the form of the summary. Through this process the frequency of objections . . . should be greatly reduced." *United States v. Smyth,* 556 F.2d 1179, 1184, n. 12 (5th Cir.1977).

4. This is shown, however, only be reference to the ledger pages themselves, i.e., by the nature of the payments. See pages 225–226 of the text of this memorandum, *infra.*

5. See pp. 224–225 of the text of this memorandum, *infra.*

6. Inasmuch as evidence to this effect, combined with other evidence of absence of actual intent to hinder, delay or defraud any creditor, is sufficient to negative any such actual intent, the nature of this evidence need not be further enlarged upon in this memorandum.

were made. As of the date of bankruptcy, October 6, 1979, according to the uncontradicted evidence, the debtor corporation's books and records showed the following balances of "accounts receivable" due in the following amounts from the following defendants:

Harry DeFeo, Sr. . . . . . . . . . . . . . $12,648.64
Harry DeFeo, Jr. . . . . . . . . . . . . . 127,291.70
Jack A. DeFeo . . . . . . . . . . . . . . 4,644.26

The plaintiff additionally adduced evidence to show that, in December of 1978, within the year next preceding the date of bankruptcy, the debtor corporation permitted the defendants Harry DeFeo, Sr., and Jack A. DeFeo to redeem stock of the defendant corporation for reductions in the "accounts receivable" owed by them to the corporation in the respective amounts of $24,000.00 and $70,284.53. It is the plaintiff's contention that these stock redemptions were of worthless stock and therefore were voidable fraudulent conveyances under the provisions of section 548 of the Bankruptcy Code. Therefore, it is the plaintiff's contention that the amounts owed the debtor corporation as of the date of bankruptcy were, in reality, as follows:

Harry DeFeo, Sr. . . . . . . . . . . . . . $36,648.64
Harry DeFeo, Jr. . . . . . . . . . . . . . 127,291.70
Jack A. DeFeo . . . . . . . . . . . . . . 74,928.79

The evidence which has been adduced shows without any contradiction that the debtor corporation was insolvent at all relevant times.[7]

The plaintiff, by means of samples of the evidence contained in corporate ledgers, has sought to show, additionally, that at least some of the payments made for the benefit of the defendants was made for the benefit of their wives also.[8] Accordingly, with respect to these amounts, plaintiff seeks recovery from the wives under the provisions of section 550 of the Bankruptcy Code providing for recovery from mediate and immediate transferees.[9] To support this ground of recovery, the plaintiff offered in evidence at the trial the entire ledger of the debtor corporation which, he contends, "demonstrates that there were transfers of direct monetary payments to the personal creditors of each DeFeo and his wife." It is further contended that "(t)he totals for the payments made to the DeFeos and their Wives within one year prior to October 6, 1979, are: Harry, Sr. and Antoinette DeFeo—$8,115.58; Harry, Jr. and Mary DeFeo—$32,158.25; and Jack and Katherine DeFeo—$5,970.71."

The evidence further shows without dispute that the debtor corporation owed the defendants "notes payable" as follows as of the date of bankruptcy: Harry DeFeo, Sr., $38,883.86; Harry DeFeo, Jr., $87,705.52; and Jack A. DeFeo, $58,284.53. Accordingly, it is the contention of those defendants that they are entitled to set off those amounts, pursuant to the provisions of § 553 of the Bankruptcy Code, from any recovery to which the plaintiff may be entitled. The plaintiff, while not disputing the existence or amounts of these "notes payable," contends that they should be equitably subordinated, under the provisions of § 510 of the Bankruptcy Code, so that the claimed setoff is not applicable.

### III

*Conclusions of Law*
(a) *The "accounts receivable"*

■ In respect of the monies transferred to Harry DeFeo, Sr., Harry DeFeo, Jr., and Jack A. DeFeo and classified as "accounts receivable" on the debtor's books, they are recoverable by the plaintiff trustee in bankruptcy if they were transfers or obligations

---

7. The debtor corporation's tax returns were introduced in evidence and they showed that on January 1, 1976, January 1, 1977, January 1, 1978, and January 1, 1979, the debtor corporation was insolvent. There is no evidence to contradict the balance-sheet insolvency of the debtor during the time periods in question.

8. But, for the reasons stated below in the text of this memorandum, a sufficient showing to this effect has not been made.

9. For the relevant text of this statute, see page 226, *infra,* of the text of this memorandum.

made within the year next preceding the date of bankruptcy "with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer occurred or such obligation was incurred" (§ 548(a)(1) of the Bankruptcy Code) or if the transfer or obligation was made while the debtor was insolvent and for "less than a reasonably equivalent value in exchange for such transfer or obligation." (§ 548(a)(2) of the Bankruptcy Code.) Otherwise and alternatively, as to all the "accounts receivable," whether originating within the year next preceding bankruptcy or prior thereto, they may be recovered by the trustee as the contract rights of the debtor corporation which vest in the trustee under section 541 of the Bankruptcy Code. In this action, the evidence falls considerably short of establishing any actual intent to hinder, delay, or defraud any creditor. There is no direct, affirmative evidence of any such actual intent and there is evidence which would tend to prove the contrary of any such intent— that the intention of the defendants, in creating the accounts receivable, was to prevent the adverse consequences tax-wise which could flow from subchapter S provisions and the subchapter S character of the corporation and partially to compensate the defendants for overtime work which had been done by them. And the gross income of the debtor corporation was, during the year in question, such that the defendants were unlikely to have recognized the fact of insolvency. The court cannot, therefore, on the basis of the evidence before it, find that the transfers of obligations were made or incurred with actual intent to hinder, delay, or defraud any creditor.

To the extent that there was no consideration for the transfers of money and credits made within the year next preceding bankruptcy, however, they are recoverable by the trustee under the provisions of section 548(a)(2), *supra.* The trustee contends that the entire sum paid out to the defendants is recoverable as being without consideration; that this is evidenced without contradiction by characterization of these amounts as "accounts receivable" on the books of the

debtor corporation; and that the evidence further shows without contradiction that the respective "accounts receivable" have never been repaid by any of the defendants. The defendants, however, contend that there was adequate consideration in (1) their promises to repay the sums or (2) their performing work for the corporation which was not compensated by means of their ordinary compensation. The first defense is patently unmeritorious as it would prevent recovery by the trustee in bankruptcy. This is so even though the defendants can cite authority for a general proposition that a promise by solvent promisors can be regarded as sufficient consideration. "When . . . the promisor is solvent and the promise is enforceable . . . a transfer to him in exchange for his promise should not be held necessarily and automatically to have no value, especially when the promise has been partially or totally performed in good faith and the creditors have profited by a reduction of the debtor's obligations after the transfer was made." 4 Collier on Bankruptcy para. 548.09, p. 548–100 (15th ed. 1980). In this action, however, the qualifying conditions are matters of insufficient proof, and furthermore, if the promises to repay can be regarded as defeating the trustee's right to recover under § 548, *supra,* he may nevertheless recover, as the successor to the debtor corporation's contract rights, on the promises themselves. This defense is therefore unavailing to the defendants. And, as noted above, all the extensions of credit prior to the year next preceding bankruptcy must be regarded as recoverable by the trustee as successor in interest under § 541 of the Bankruptcy Code to the debtor corporation.

■ Alternatively, as noted above, defendants interpose the defense that some or all of the "accounts receivable" owed by them to the corporation represent additional compensation for extra services which they rendered to the corporation. To support these contentions, the defendants presented the testimony of Harry DeFeo, Jr., to the effect that the debtor corporation withheld monies from the defendants' pay

checks "(j)ust in case if we needed it for something else." (Tr. 134.) He further testified that he and Jack DeFeo unremittingly worked from "between one and twelve o'clock in the morning" to "five or six in the evening" for six days per week and sometimes on Sunday. *Id.* But the amounts withheld from the paychecks constitute the "notes payable" which are now sought to be set off against any recovery by the trustee in bankruptcy. The ordinary salaries paid by the debtor corporation to the defendants Harry DeFeo, Jr., and Jack A. DeFeo were the respective sums of $16,000 annually. The testimony of Harry DeFeo, Jr., in these respects, is uncontradicted, as is his testimony that the books of the corporation were kept by Leonard H. Bonham and that he and his father and brother had little conversance with the books that were kept. The evidence further shows that the defendants intended that they receive, at some point, some additional compensation for the extraordinary time which, according to the uncontradicted evidence, was spent by them in working for the debtor corporation. On the basis of the entire record as it contains facts relevant to this issue, the court finds that teh defendants Harry DeFeo, Jr., and Jack A. DeFeo, for the period here in question, are entitled to additional compensation of $10,000 each. This amount must accordingly be deducted from the total amount of the accounts receivable which the trustee is otherwise entitled to recover either under the theory of § 548, *supra,* or simply as accounts receivable of the debtor corporation. The record of facts before the court shows without contradiction that an extraordinary number of hours of services were worked by the defendants Harry DeFeo, Jr., and Jack A. DeFeo and that they expected at some point to be paid for their services. The defendants, however, have not rendered any precise evidence as to the value of the services performed other than the facts that their performance involved working almost twice the normal 40-hour weekly work period with some consistency over the years in question. Therefore, if it is accepted that $16,000 is a fair annual salary for a year of ordinary effort at 40

hours per week, the evidence of a greatly expanded work week with some consistency over more than the past year makes it reasonably certain that at least $8,000 to $10,000 annually was earned in excess of the $16,000 which was paid. Although the testimony (which, as the court notes, is uncontradicted) would cover more than one year, the uncertainty as to the precise frequency with which the extraordinary hours were worked would make an additional award speculative. But, when the evidence is uncontradicted to this effect, the court is warranted in drawing an inference that the defendants Harry DeFeo, Jr., and Jack A. DeFeo performed extraordinary services for the debtor corporation and it would be unjust enrichment of the estate if they should not receive credit therefor by way of setoff as provided by § 553 of the Bankruptcy Code.

### (b) *The stock redemption*

■ The evidence leaves little doubt that the stock redemption of December 1978, which was within a year of the date of bankruptcy, was a transfer which was voidable under § 548(a)(2) of the Bankruptcy Code. There can be little doubt that the corporation was insolvent at the time when the income tax returns which were adduced in evidence show that in January 1979 the debts of the corporation exceeded the assets. Further, other than the fact of insolvency, there is no countervailing evidence to demonstrate any value for the stock at the time of the redemption. The original capitalization of the corporation cannot, as the defendants contend, suffice to establish that the value of the stock at the time of the redemption was anything approaching the credits granted the defendants against their respective "accounts receivable" with the debtor corporation. Thus, the $24,000 credit allowed to the defendant Harry DeFeo, Sr., on this account and that allowed to Jack A. DeFeo of $70,284.53 should be disallowed.

### (c) *Liability of the wives*

■ The evidence is wholly insufficient to support any ground of recovery against

the defendant wives of the defendants Harry DeFeo, Sr., Harry DeFeo, Jr., and Jack A. DeFeo. All that was presented in this regard were account ledgers tending to show that the accounts receivable, in part, were comprised of records of advances to the respective defendants in the form of paying certain personal expenses. Despite the court's urging and the existence of the pretrial order in this regard, the evidence which has been adduced has not been properly summarized and therefore leaves it to the realm of speculation as to which of the expenses can properly be said to have redounded to the benefit of the respective spouses. Entries in the ledgers which are quite conclusionary in character, and which, for instance, may refer to house payments, tax payments, utility bills and the like do not, without more, establish that the wives of the defendants also benefitted. There was no testimony or other evidence from which it could be concluded, for instance, that the payments were made with respect to entirety property or a common residence. And there was no actual itemization in the evidence of the payments which comprise the total amounts sought from the wives in this regard. In order to recover under § 550 of the Bankruptcy Code, the plaintiff must demonstrate that the wives, or any of them, were transferees of the property in some legal sense "or the entity for whose benefit such transfer was made." Section 550(a)(1) of the Bankruptcy Code. But the evidence, as analyzed above, does not so establish. Otherwise, the only means of recovery from the wives is to establish that they contracted to repay the "accounts receivable" and this has "accounts receivable" and this has not been done.

### (d) The "notes payable"

██ As noted above, the evidence before the court establishes without contradiction that the defendants Harry DeFeo, Sr., Harry DeFeo, Jr., and Jack A. DeFeo are holders of notes payable which, unless subject to equitable subordination under § 510 of the Bankruptcy Code, can provide the basis of an additional setoff for the defendants under § 553 of the Bankruptcy Code.

Section 510(c)(1) of the Bankruptcy Code pertinently provides that:

> "after notice and a hearing, the court may ... under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest."

According to the Legislative History which is printed under that section, the principles of equitable subordination there referred to "are defined by case law, and have generally indicated that a claim may normally be subordinated only if its holder is guilty of misconduct." Senate Report No. 95–989, 95th Cong., 2d Sess. (1978) 74, U.S.Code Cong. & Admin.News 1978, p. 5787, 5860. "It is intended that the term 'principles of equitable subordination' follow existing case law and leave to the courts development of this principle. To date, under existing law, a claim is generally subordinated only if (the) holder of such claim is guilty of inequitable conduct, or the claim itself is of a status susceptible to subordination, such as a penalty or a claim for damages arising from the purchase or sale of a security of the debtor." 124 Cong.Rec. H 11,095 (Sept. 28, 1978); S 17,412 (Oct. 6, 1978). In the wake of these statements of Congressional intent, the courts have decided generally that some misconduct, either directly or indirectly related to the claim, is necessary in order to warrant subordination. See, e.g., *Matter of Mobile Steel Co.*, 563 F.2d 692, 700, 701 (5th Cir.1977), in which it is recognized that "inequitable conduct directed against the bankrupt or its creditors *may* be sufficient to warrant subordination of a claim irrespective of whether it was related to the acquisition of that claim" but it is also recognized that "a claim or claims should be subordinated only to the extent necessary to offset the harm which the bankrupt and its creditors suffered on account of the inequitable conduct." See also *Matter of Multiponics, Inc.*, 622 F.2d 709, 713 (5th Cir.1980), in which it is recognized that "the inequitable conduct which

must be shown need not necessarily be related to the acquisition or assertion of the claim," but must nevertheless result in some injury "to the creditors of the bankrupt." *Id.* at 721. There is no evidence of any inequitable or harmful conduct in this case by the defendants. The evidence which is before the court leaves no question but that the loans were actually made in good faith and that the notes are indeed payable according to the amounts which are requested by the respective defendants. Under such circumstances, the courts "are unwilling to find a dominant shareholder may not loan money to a corporation in which he is the principal owner and himself become a ... creditor. To hold that the debt may be subordinated on that basis alone would discourage owners from trying to salvage a business and require all contributions to be made in the form of equity capital. We do not think that is desirable as social policy, nor required by the cases." *In re Mid-Town Produce Terminal, Inc.,* 599 F.2d 389, 392 (10th Cir.1979)

For the foregoing reasons, this court must find that the defendants' "notes payable" are not subject to equitable subordination on the evidence which has been put before this court and that, therefore, the defendants are entitled to a setoff under the provisions of section 553 of the Bankruptcy Code.

### IV

In summary, the following defendants are subject to the following claims of the trustee, and are entitled to the following setoffs, leading to the following total net liabilities:

*Harry DeFeo, Sr.*

| | |
|---|---:|
| "Account receivable" as of October 6, 1979 | $12,648.64 |
| Amount of stock redemption disallowed | 24,000.00 |
| Total Claim of Trustee | 36,648.64 |
| Amount of setoff for "notes payable" | 38,883.86 |
| Amount due | 0 |

*Harry DeFeo, Jr.*

| | |
|---|---:|
| "Account receivable" as of October 6, 1979 | $127,291.70 |

| | |
|---|---:|
| Amount of setoff for salary | 10,000.00 |
| Amount of setoff for "notes payable" | 87,605.52 |
| Amount due | 28,586.18 |

*Jack A. DeFeo*

| | |
|---|---:|
| "Account receivable" as of October 6, 1979 | 4,644.26 |
| Amount of stock redemption disallowed | 70,284.53 |
| Total Claim of Trustee | |
| Amount of setoff for salary | 10,000.00 |
| Amount of setoff for "notes payable" | 58,284.53 |
| Amount due | 6,644.26 |

### V

Accordingly, in accordance with the foregoing, it is hereby

ADJUDGED that the plaintiff trustee in bankruptcy have and recover the sum of $28,586.18 from the defendant Harry DeFeo, Jr., and the sum of $6,644.26 from the defendant Jack A. DeFeo and that his complaint otherwise be denied.