### In re BRIDGE INFORMATION SYSTEMS, INC., et al., Debtors.

Gulfcoast Workstation Corp. & Relational Funding Corp., Plaintiffs,

v.

Scott P. Peltz, Plan Administrator, Defendant.

Bankruptcy No. 01–41593–293.
Adversary No. 02–4089–293.

United States Bankruptcy Court, E.D. Missouri, Eastern Division.

Sept. 2, 2004.

Gregory D. Willard, Bryan Cave, St. Louis, MO, for Debtors, Defendant and Counter–Claimant.

Cynthia M. Woolverton, Millsap and Singer, St. Louis, MO, Dennis A. Dressler, Chicago, IL, for Plaintiff.

Cullen K. Kuhn, Bryan Cave, St. Louis, MO, for Defendant.

## MEMORANDUM OPINION

DAVID P. MCDONALD, Bankruptcy Judge.

Gulfcoast Workstation ("Gulfcoast") filed a secured claim against the estate of debtor Bridge Information System ("Bridge"), in the amount of $713,677.00. Gulfcoast argues that it is entitled to a secured claim in the amount of $713,677.00 under 11 U.S.C. § 506(a) because it may setoff that amount from the $1,052,574.88 that Bridge owes it as provided in 11 U.S.C. § 553(a). The Court agrees and will enter judgment in favor of Gulfcoast.

### JURISDICTION AND VENUE

This Court has jurisdiction over the parties and subject matter of this proceeding under 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 9.01(B) of the United States District Court for the Eastern District of Missouri. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B), which the Court may hear and determine. Venue is proper in this District under 28 U.S.C. § 1409(a).

### FACTUAL FINDINGS

The Court finds that the evidence adduced by the parties at trial established the following facts. Gulfcoast and Bridge entered into a contract in 1999 whereby Bridge agreed to purchase computer equipment from Gulfcoast. (the "1999 Agreement"). William Allison, Gulfcoast's sales representative responsible for administering the Bridge account, testified at trial that during his initial sales presentation to Bridge, he did highlight the fact that Gulfcoast was a subsidiary of Relational Funding ("Relational"), a large and financially stable leasing company.

After the parties executed the 1999 Agreement, Laurie Donitz, Bridge's resales manager for Sun Microsystems ("Sun") computer equipment, approached William Allison about the possibility of Gulfcoast purchasing Sun equipment from Bridge. Because Bridge was one of Gulfcoast's largest customers, Gulfcoast readily agreed to purchase Sun computer equipment (the "Sun Equipment") from Bridge in hopes that Bridge would reciprocate by purchasing more computer products from Gulfcoast.

Gulfcoast originally listed itself as the buyer of the Sun Equipment on the purchase orders it submitted to Bridge. The resale agreement between Sun and Bridge (the "Sun Agreement"), however, prohibited Bridge from selling the Sun Equipment to resellers such as Gulfcoast. (Donitz March 25, 2002 Deposition p. 43–44). The Sun Agreement did allow Bridge to sell the Sun Equipment to Relational because Relational's primary business is leasing, not reselling, computer equipment.

Accordingly, to circumvent the restriction on selling to resellers contained in the Sun Agreement, Donitz approached Allison with the suggestion that Gulfcoast list Relational as the purchaser on the purchase orders and that Bridge show Relational as the purchaser on the invoices. Once again, because of the amount of computer equipment Bridge was purchasing from Gulfcoast, Gulfcoast agreed to Bridge's request. (Donitz March 25, 2002 Deposition p. 49; June 20, 2002 Deposition p. 23; Allison's trial testimony).

Although Relational was the entity listed as the purchaser on the purchase orders, Gulfcoast's purchasing manager, Jim Spengler, was the person who actually submitted the purchase orders to Bridge. (Donitz June 20, 2002 Deposition p. 43–44). Also, although Relational was listed as the purchaser on the invoices sent by Bridge, Gulfcoast was the entity that remitted payment on the invoices. (Donitz June 20, 2002 Deposition pp. 31–32).

Paul Frankel, Bridge's Vice–President of resale operations, testified that in addi-

tion to circumventing the reseller's prohibition in the Sun Agreement, he also told Laurie Donitz that Relational had to be responsible for Gulfcoast's purchase of the Sun Equipment because Relational was a much better credit risk than Gulfcoast. Frankel testified, however, that he had no knowledge that anyone at Bridge ever contacted Relational concerning this issue. (Frankel March 25, 2002 Deposition, p. 23; June 20, 2002 Deposition pp. 22–23). Also Frankel testified that although he may have had a conversation with either Will Allison and Paul Hoffman at Gulfcoast concerning his demand, he was unable to recall the substance of any conversation with either. (Frankel March 25, 2002 Deposition, p. 18; Frankel June 20, 2002 Deposition pp. 18–19).

Donitz testified that she told Allison that Bridge was requiring Relational to be listed as the purchaser on the purchase orders and invoices because of both the Sun Agreement reseller prohibition and the credit issues. (Donitz June 20, 2002 Deposition p. 35–36). At one point Donitz testified that although Allison told her Gulfcoast had no objection to listing Relational as the nominal purchaser of the Sun Equipment, he never represented to her that Relational had consented to being responsible for Gulfcoast's purchases of the Sun Equipment from Bridge. (Donitz June 20, 2002 Deposition p. 35). Donitz then subsequently testified that Allison did represent to her that Relational would in fact be obligated for the purchase of the Sun Equipment. (Donitz June 20, 2002 Deposition p. 42).

Donitz, however, did concede that she never personally spoke with anyone at Relational with respect to it being liable for Gulfcoast's purchase on the Sun Equipment. Also, Donitz testified that she knew Allison was a Gulfcoast employee and that she contacted him whenever Gulfcoast failed to timely remit payment to Bridge. (Donitz June 20, 2002 Deposition p. 39). Donitz testified that she knew Jim Spengler, Gulfcoast's purchasing manager, prepared and sent all the invoices to Bridge but she believed that he was a Relational employee. Spengler testified, however, that although he never explicitly told Donitz that he was a Gulfcoast employee, the two frequently communicated by e-mail and that his e-mail address contained the letters "GCW", for Gulfcoast Workstation Group. (Spengler Deposition p. 10–11). Spengler additionally commented that someone would answer the phone "Gulfcoast" whenever Donitz called his office. (Spengler Deposition p. 11).

William Allison testified at trial that the only reason Donitz gave to him for the need to list Relational as a nominal purchaser was to circumvent the reseller restrictions contained in the Sun Agreement. He testified that Donitz never informed him that Relational had to be responsible for Gulfcoast's purchase of the Sun Equipment because of Relational's superior financial position compared to Gulfcoast. Also, he testified that he never represented to Donitz that Relational would be responsible for Gulfcoast's purchase of the Sun Equipment.

Donitz also testified that she believes that Relational received some of the Sun Equipment. She was unable to identify, however, any specific examples where Bridge delivered the Sun Equipment to Relational or one if its customers. Bradley Whitsett, Gulfcoast's General Manager and Vice President, testified at trial that Gulfcoast received all of the Sun Equipment from Bridge with respect to the $713,000.00 at issue. Spengler also testified that Gulfcoast received all the Sun Equipment subject to the transaction in question, although there may have been some occasions when Bridge delivered the

Sun Equipment directly to Gulfcoast's customers. (Spengler Deposition p. 8).

Bridge filed its petition for relief under Chapter 11 of the United States Bankruptcy Code on February 15, 2001. At the time Bridge filed its petition for relief, it owed Gulfcoast $1,052,574.88 under the 1999 Agreement and Gulfcoast owed it $713,677.00. Gulfcoast filed a motion for relief from the automatic stay under § 362(d) so that it could assert is right to setoff the pre-petition mutual obligations as provided in § 553(a).

Bridge initially responded that Gulfcoast could not setoff the $713,677.00 against the $1,052,574.88 that Bridge owed it because Relational, not Gulfcoast, was the responsible party for the purchase of the Sun Equipment. Accordingly, Bridge argued that there was no mutuality between Gulfcoast and Bridge as required by § 553(a). At that point in the proceedings, the Court, at the request of both parties, allowed Gulfcoast to convert its application for a secured claim into an adversary proceeding.

Gulfcoast then filed a two count adversary complaint against Bridge. Count I is a request that the Court determine the validity and extent of Gulfcoast's secured claim under § 506(a) against Bridge's estate. Count II requests a declaration that Relational is not liable to Bridge for Gulfcoast's purchase of the Sun Equipment.

Bridge, in its answer to Gulfcoast's adversary complaint, continued to argue that Relational, not Gulfcoast, was liable for the $713,677.00 at issue and therefore the required mutuality of debt between Bridge and Gulfcoast was lacking. Bridge also filed a counterclaim against Relational and Gulfcoast. Count I of the counterclaim was an action for breach of contract against Relational. Count II was an unjust enrichment cause of action against Gulfcoast.

After the parties conducted some discovery, Bridge altered its strategy and filed an amendment to its counterclaim. (the "Amended Counterclaim"). The Amended Counterclaim contained two changes from the original counterclaim. First, Bridge dropped its breach of contract claim against Relational in the Amended Counterclaim. Second, Bridge added a fraud and negligent misrepresentation claim against Gulfcoast in Counts II and III of the Amended Counterclaim. Bridge asserted in these two counts that Gulfcoast had represented to Bridge that Relational had agreed to be liable for Gulfcoast's purchase of the Sun Equipment from Bridge.

Bridge did retain the unjust enrichment cause of action against Gulfcoast in Count I of the Amended Counterclaim. Bridge also asserted in its pre-trial brief and at trial that Gulfcoast was not entitled to the equitable remedy of setoff under the equitable defense of unclean hands, because Gulfcoast complied with Bridge's request to circumvent Bridge's obligations under the Sun Agreement by listing Relational as the nominal purchaser of the Sun Equipment.

Based on this record, the Court finds that Relational never agreed to be obligated for Gulfcoast's purchase of the Sun Equipment. Also, the Court finds the testimony of Gulfcoast's witnesses to be more credible than the testimony of Bridge's witnesses. Accordingly, the Court finds that Gulfcoast never represented to Bridge that Relational agreed to be liable for Gulfcoast's purchase of the Sun Equipment and that Bridge only delivered the Sun Equipment to Gulfcoast or its customers. Further, the Court believes that credible evidence adduced at trial demonstrates that Laurie Donitz's knew or should have known that Bridge was deal-

ing solely with Gulfcoast with respect to the purchase of the Sun Equipment. Accordingly, the Court will enter judgment in favor of Gulfcoast both on its adversary complaint and Bridge's Amended Counterclaim.

## DISCUSSION

### A. Introduction

■ Section 553(a) provides in relevant part that the Bankruptcy Code does not alter a creditor's right to offset "a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case". Because section 553(a) does not establish an independent federal right to setoff, courts must examine applicable state law to determine the creditor's substantive setoff rights. *Citizens Bank of Maryland v. Strumpf,* 516 U.S. 16, 18, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995). Also, § 506(a) provides that the amount of debt the creditor may setoff under § 553(a) is a secured claim against the debtor's estate.

■ Although state law governs the creditor's substantive right to setoff, section 553(a) does impose two additional requirements apart from state law as to what types of debts the creditor may setoff. First, § 553(a) requires that the two debts must have arisen pre-petition. *United States v. Gerth,* 991 F.2d 1428, 1431 (8th Cir.1993). Additionally, if the applicable state law does not require strict mutuality, § 553(a) mandates that the debts sought to be offset represent mutual obligations between the debtor and creditor. *Id.*

Here, Bridge does not dispute that the two debts in question arose pre-petition. Bridge does argues, however, that it owes the $713,667.00 to Relational and not to Gulfcoast. Thus, Bridge contends that the required mutuality is lacking between it and Gulfcoast. Bridge also maintains that Gulfcoast is not entitled to setoff under the equitable defense of unclean hands because Gulfcoast assisted Bridge in circumventing Bridge's obligations to Sun under the Sun Agreement.

### B. Missouri substantive law applies.

■ Because § 553(a) merely preserves whatever rights the creditor has under applicable state law to setoff prepetition mutual debts, a threshold matter the Court must determine is which state's law applies. Generally, when a federal court is applying state substantive law, it must apply the conflict of law rules of the state in which it sits. *Inacom Corp. v. Sears, Roebuck & Co.,* 254 F.3d 683, 687 (8th Cir.2001). This is the case even if the federal court has federal question jurisdiction over the litigation, but the parties' substantive rights are purely a product of state law. *FDIC v. Deloitte & Touche,* 834 F.Supp. 1129, 1135 n. 3 (E.D.Ark.1992); *see also Bianco v. Erkins (In re Gaston & Snow),* 243 F.3d 599, 606–07 (2d Cir.) *cert. denied* 534 U.S. 1042, 122 S.Ct. 618, 151 L.Ed.2d 540 (2001) (noting that bankruptcy courts must apply the forum state's choice of law principles when the parties' substantive rights and liabilities under the Code are a function of state law). Also, if neither party argues that the court should apply another state's substantive law in adjudicating the dispute, the court must apply the forum state's substantive law. *BBSerCo, Inc. v. Metrix Co.,* 324 F.3d 955, 960 n. 3 (8th Cir.2003).

Here, neither Bridge nor Gulfcoast argued that any particular state's substantive law should apply with respect to any issue in dispute. In fact, the parties did not produce specific evidence as to which state has the most significant contact with respect to the various issues in dispute. Therefore, the Court will apply Missouri's

substantive law with respect to all the issues in dispute.

*C. Gulfcoast has right to setoff the $713,677.00 under § 553(a).*

*1. Setoff under Missouri law.*

 Missouri law provides that a defendant has the right to setoff the amount it owes the plaintiff against the amount that the plaintiff owes it. *Buchweiser v. Estate of Laberer,* 695 S.W.2d 125, 129 (Mo. banc 1985). Also, like § 553(a), Missouri law requires that the setoff be based on mutual indebtedness between the two parties and the debts must be due between the same parties acting in the same capacity. *Burns v. Plaza West Assoc.,* 979 S.W.2d 540, 552 (Mo.Ct.App.1998). The two debts, however, need not arise out of the same transaction. *Buchweiser,* 695 S.W.2d at 129. The Court finds that Gulfcoast has produced sufficient evidence to demonstrate that it is entitled to setoff its mutual obligations with Bridge under Missouri law.

*2. The $713,677.00 that Gulfcoast owes Bridge and the $1,052,574.88 that Bridge owes Gulfcoast represent mutual obligations between Gulfcoast and Bridge.*

 As illustrated above, Bridge maintains that Relational, not Gulfcoast, is liable for the $713,677 due to Bridge for the purchase of the Sun Equipment. Accordingly, Bridge contends that the required mutuality is lacking to allow Gulfcoast to setoff the $713,677 against the $1,052,88 that Bridges owes Gulfcoast.

The evidence adduced at trial demonstrates that only Gulfcoast, not Relational, entered into a contract with Bridge to purchase the Sun Equipment. Thus, only Gulfcoast is liable to Bridge with respect to the purchase of the Sun Equipment.

 Bridge did present evidence at trial that Donitz may have subjectively believed that Relational and Gulfcoast were the same legal entity. Under Missouri law, however, a parent and subsidiary corporation are two separate and distinct legal entities. *Mitchell v. K.C. Stadium Concessions, Inc.,* 865 S.W.2d 779, 784 (Mo.Ct.App.1993). A parent corporation does not cloak a subsidiary corporation with apparent authority merely because of the corporate affiliation between the two entities. *Ritter v. BJC Barnes Jewish Christian Health Sys.,* 987 S.W.2d 377, 386 (Mo.Ct.App.1999). Thus, regardless of Donitz's subjective belief, only Gulfcoast actually entered in an agreement with Bridge to purchase the Sun Equipment and only Gulfcoast is liable to Bridge.

Bridge also argues that the required mutuality is lacking because Donitz testified that Bridge delivered some of the Sun Equipment to Relational or its customers. Donitz was unable to cite any specific instances when Bridge delivered the Sun Equipment to Relational. Also, the evidence established at trial indicates that only Spengler, Gulfcoast's purchasing manager, submitted the invoices to Bridge with respect to the Sun Equipment. Furthermore, both Spengler and Whitsett testified that only Gulfcoast received the Sun Equipment. In fact, there is no evidence that anyone at Bridge ever contacted anyone at Relational. Given this record, the Court finds that only Gulfcoast received the Sun Equipment from Bridge. Accordingly, the Court finds that the evidence produced at trial demonstrates that the purchase of the Sun Equipment was strictly a bilateral transaction between Gulfcoast and Relational.

*3. Bridge may not utilize the equitable defense of unclean hands.*

 Bridge also argues that Gulfcoast is not entitled to the equitable remedy of setoff under the doctrine of unclean hands

because Gulfcoast acted inequitably in assisting Bridge in circumventing Bridge's obligations to Sun under the Sun Agreement. The Court notes that Bridge never formally moved to amend its answer to include this affirmative defense. Bridge, however, did introduce evidence at trial with respect to this defense without objection from Gulfcoast. Accordingly, under Fed.R.Civ.P. 15(b), incorporated into this adversary by Bankr.R. 7015, the Court will treat Bridge's answer as including the affirmative defense of unclean hands.

Under the doctrine of unclean hands, a court of equity will not afford relief to a party who has acted inequitably concerning the subject matter of the litigation. *Kenney v. Emge*, 972 S.W.2d 616, 620 (Mo.Ct.App.1998). The doctrine, however, should not be applied woodenly. Rather, the court should apply the doctrine when it promotes the equitable purposes underlying the doctrine. *Nelson v. Emmert*, 105 S.W.3d 563, 568 (Mo.Ct.App. 2003). Thus, for example, a party invoking the doctrine of unclean hands must demonstrate that it has been injured by the plaintiff's alleged inequitable conduct. *Price v. Ridler*, 373 S.W.2d 59, 62 (Mo. 1963). Also, a court should refrain from applying the doctrine of unclean hands when the defendant itself acted inequitably with respect to the transaction in question. *Nelson*, 105 S.W.3d at 569.

Here, Bridge obviously was not harmed by Gulfcoast assisting it in circumventing its own obligations to Sun under the Sun Agreement. In fact, the evidence clearly establishes that Bridge itself was the instigator of Gulfcoast's alleged inequitable conduct when Donitz requested that Gulfcoast change the purchaser of the Sun Equipment on the purchase orders from Gulfcoast to Relational. Thus, the evidence established that Bridge itself acted inequitably with respect to Gulfcoast's purchase of the Sun Equipment. Given this evidence, Bridge may not invoke the equitable defense of unclean hands to deny Gulfcoast's right to setoff its pre-petition mutual debts with Bridge.

*D. The Court will not exercise whatever discretion it has to deny Gulfcoast's right to setoff under § 553(a).*

Bridge alternatively argues that even if Gulfcoast can establish that it is entitled to setoff under § 553(a), the Court should exercise its discretion to deny Gulfcoast's request to setoff. The Eighth Circuit has stated in *dicta* that a bankruptcy court has the discretion to disallow an otherwise proper setoff under § 553(a) when "compelling" circumstances are present. *Bird v. Carl's Grocery Co., Inc. (In re NWFX, Inc.)*, 864 F.2d 593, 596 (8th Cir.1989). The *Bird* Court, however, failed to provide any guidance as to what constituted compelling circumstances or to point to the source of the court's discretion to deny an otherwise proper setoff under § 553(a).

The Court believes that whatever discretion it has to deny an otherwise proper setoff under § 553(a) is substantially limited for two reasons. First, a creditor's right to setoff pre-petition mutual debts with the debtor has a long and venerable tradition in bankruptcy and therefore a presumption exists in favor of enforcing a creditor's right to setoff under § 553(a). *In re DeLaurentiis Entertainment Group, Inc.*, 963 F.2d 1269, 1277 (9th Cir.) *cert. denied* 506 U.S. 918, 113 S.Ct. 330, 121 L.Ed.2d 249 (1992).

Second, the text and legislative history of § 553(a) itself makes it clear that the purpose of the statute is to preserves a creditor's state law rights to setoff pre-petition mutual debts in bankruptcy. There is nothing in the text or the legislative history of § 553(a) or any other

Code provision that gives the court the power to diminish that right. Also, a well established principle in bankruptcy law is that a bankruptcy court may not utilize its equitable powers codified in § 105(a) to circumvent a specific provision in the Code. *Raleigh v. Illinois Dep't. of Revenue*, 530 U.S. 15, 24–25, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000). Therefore, a bankruptcy court's ability to curtail a creditor's right to a setoff that is proper under § 553(a) is limited to only those rare cases where fraud or illegal conduct is present. *In re Alvstad*, 223 B.R. 733, 742 (Bankr. D.N.D.1998).

Here, there is no evidence that Gulfcoast engaged in any illegal conduct with respect to its purchase of the Sun Equipment. Also, although Gulfcoast knew that Bridge's request to list Relational as the buyer of the Sun Equipment was an attempt to circumvent Bridge's obligation to Sun in the Sun Agreement, Bridge failed to produce any evidence that Gulfcoast acted fraudulently. Further, as discussed above, whatever inequitable conduct Gulfcoast may have been guilty of in its purchase of the Sun Equipment was not directed towards Bridge. Given this evidence, the Court will not exercise whatever discretion it has to deny Gulfcoast's explicit right to setoff the pre-petition mutual obligations with Bridge under § 553(a).

*E. Bridge is not entitled to relief on its fraud and negligent misrepresentation causes of action in the Amended Counterclaim.*

Counts II and III of the Amended Counterclaim contain a fraud and negligent misrepresentation claim against Gulfcoast. Under Missouri law, a party must prove that the counter party misrepresented a material fact to prevail on both a fraud and negligent misrepresentation claim. *Prof'l Laundry Manage-*

*ment Sys., Inc. v. Aquatic Techs., Inc.*, 109 S.W.3d 200, 205–06 (Mo.Ct.App.2003).

The basis of both of these claims is Bridge's assertion that William Allison represented to Donitz that Relational would be responsible for Gulfcoast's purchase of the Sun Equipment. As the Court has previously discussed in its findings of fact, the credible evidence adduced at trial does not support Bridge's contention that Gulfcoast made any representation to Bridge that Relational would be liable for Gulfcoast's purchase of the Sun Equipment. Accordingly, Bridge has failed to establish an essential element of both its fraud and negligent misrepresentation claim.

Bridge also argues that even if Gulfcoast never made a direct representation that Relational would be liable to Bridge for Gulfcoast's purchase of the Sun Equipment, the fact that Allison touted Gulfcoast's corporate affiliation with Relational in his original sales presentation to Donitz somehow supports an inference of a misrepresentation. Allison's original sales presentation, however, had nothing to do with Gulfcoast's purchase of the Sun Equipment but rather was an attempt to convince Bridge to purchase computer equipment from Gulfcoast. Furthermore, Allison's sales presentation contained no specific representation that Relational would be obligated for Gulfcoast's debts. Rather, Allison's initial sales presentation was merely a general statement about Gulfcoast's overall financial strength. Such general, non-specific statements are mere puffery and do not support a claim for fraud or negligent misrepresentation under Missouri law. *Constance v. B.B.C. Dev. Co.*, 25 S.W.3d 571, 587–88 (Mo.Ct. App.2000).

Based on this record, the Court finds that Bridge failed to establish that Gulfcoast represented to Bridge that Relation-

al would be liable for Gulfcoast's purchase of the Sun Equipment. Accordingly, Bridge failed to meet its burden of proof on both its fraud and negligent misrepresentation claim contained in Counts II and III respectively of the Amended Counterclaim.

*F. Bridge is not entitled to judgment on it unjust enrichment claim.*

 Bridge argues in Count I of its Amended Counterclaim that allowing Gulfcoast to setoff the $713,677.00 it owes Bridge against the $1,052,574.88 that Bridge owes it would unjustly enrich Gulfcoast. Bridge premises its unjust enrichment cause of action on an argument that if Gulfcoast is allowed to setoff the $713,677.00 it owes Bridge, it effectively would have obtained the Sun Equipment without paying for it and benefitted from its procurement of the Sun Equipment by reselling it for a profit.

 Unjust enrichment occurs when a benefit is conferred upon a party in circumstances in which the party's retention of that benefit without paying for it would be unjust. *S & J Inc. v. McLoud & Co.*, 108 S.W.3d 765, 768 (Mo.Ct.App.2003). A party does not retain a benefit without paying for it when it invokes its right to setoff mutual obligations with the counter party. Rather, setoff is a method by which a court can "avoid the absurdity of forcing A to pay B when B owes A." *Strumpf*, 516 U.S. at 19, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995). Thus, setoff under § 553(a) does not eviscerate the debt of either the creditor or the debtor but allows the court to net the pre-petition mutual debts between the two parties. Accordingly, Bridge has failed to demonstrate that Gulfcoast would not pay for the Sun Equipment if it is allowed to setoff the mutual pre-petition obligations as provided under § 553(a).

The Court also notes that Bridge's unjust enrichment argument would render § 553(a) largely superfluous because a creditor almost always receives something of value from the debtor in exchange for its pre-petition obligation to the debtor. Thus, under Bridge's unjust enrichment argument, it would be the debtor, not the creditor, who would be unjustly enriched. This results because absent a creditor's right to setoff as preserved in § 553(a), the debtor-in-possession has the right to collect the full amount that the creditor owes it but the creditor would only be entitled to collect a fraction of what the debtor-in-possession owes the creditor. *See In re De Laurentiis*, 963 F.2d at 1277; *Flanigan v. DeFeo (In re DeFeo Fruit Co. Inc.)*, 24 B.R. 220, 225 (Bankr.W.D.Mo.1982).

Based on the evidence established at trial, the Court finds that Bridge has fallen far short of demonstrating that Gulfcoast would be unjustly enriched by allowing it to setoff of its mutual pre-petition obligations with Bridge as explicitly allowed by § 553(a). Accordingly, the Court will enter judgment in favor of Gulfcoast with respect to Count I of the Amended Counterclaim.

## CONCLUSION

The evidence adduced at trial demonstrates that only Gulfcoast is liable to Bridge for Gulfcoast's purchase of the Sun Equipment. Accordingly, the $713,677.00 that Gulfcoast owes Bridge and the $1,052,574.88 that Bridge owes Gulfcoast are mutual debts. Also, there is no dispute that these two debts arose pre-petition. Further, Bridge may not employ the equitable defense of unclean hands to defeat Gulfcoast's setoff rights. Accordingly, Gulfcoast has the right under § 553(a) to setoff the $713,677.00 that it owes Bridge against the $1,052,574.88 that Bridge owes it. Therefore, Gulfcoast has a secured

claim against Bridge's estate in the amount of $713,677.00 under § 506(a).

The evidence produced at trial also demonstrates that Gulfcoast made no specific representation to Bridge that Relational would be obligated for Gulfcoast's liability to Bridge with respect to Gulfcoast's purchase of the Sun Equipment. Also, Bridge failed to produce any evidence that Gulfcoast would be unjustly enriched if it is allowed to setoff its pre-petition mutual obligations with Bridge as provided in § 553(a). Accordingly, the Court will enter judgment in favor of Gulfcoast on the Amended Counterclaim.

An Order consistent with this Memorandum Opinion will be entered this date.